**<u>EXHIBIT A</u>**

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO: FSD  131  OF 2016

IN THE MATTER OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF THE EXEMPTED LIMITED PARTNERSHIP LAW, 2014

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

### WINDING UP PETITION

TO THE GRAND COURT

1    The humble petition of Platinum Partners Value Arbitrage Fund L.P. (the "**Master
     Fund**"), an exempted limited partnership registered under the Exempted Limited
     Partnership Law, 2014 and having its registered office at Intertrust Corporate
     Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman,
     KY1-9005, acting by Platinum Management (NY) LLC (the "**General Partner**") in
     its capacity as the general partner of the Master Fund shows that:

**Preamble**

2.   The Master Fund, acting by its General Partner, seeks a winding up order in
     respect of the Master Fund pursuant to section 92(d) of the Companies Law
     (2013 Revision) (the "**Companies Law**") (as that section is applied in respect of
     exempted limited partnerships by, and subject to the provisions of, section 36 of
     the Exempted Limited Partnership Law, 2014 (the "**ELP Law**")) on the ground
     that the Master Fund is unable to pay its debts and is therefore insolvent.

**The Master Fund**

3.   The Master Fund is presently constituted pursuant to a second amended and
     restated limited partnership agreement dated 1 July 2008 (the "**LPA**") made
     between the General Partner and each of the Onshore Feeder Fund and
     Platinum Partners Value Arbitrage Fund (International) Limited (the "**Offshore
     Feeder Fund**") in their capacities as the limited partners of the Master Fund. On
     or around 22 June 2010, the Offshore Feeder Fund ceased to be a limited
     partner of the Master Fund and Platinum Partners Value Arbitrage Intermediate

1

Fund Limited (the "**Intermediate Offshore Feeder Fund**") took its place as limited partner of the Master Fund.

4.      The Master Fund is registered with the Cayman Islands Registrar of Exempted Limited Partnerships with registration number 13869. The Master Fund is a mutual fund registered with the Cayman Islands Monetary Authority ("**CIMA**") pursuant to the Mutual Funds Law (as amended), with reference number 587506.

5.      The Offshore Feeder Fund, the Intermediate Offshore Feeder Fund, the Master Fund, together with the Onshore Feeder Fund, form a typical master/feeder investment fund structure within the Platinum group of funds (the "**Platinum Group**") whereby:

(a)      offshore and US tax-exempt investors invest their capital into the Offshore Feeder Fund, which in turn invests into the Intermediate Offshore Feeder Fund , which in turn invests into the Master Fund;

(b)      onshore investors invest into the Onshore Feeder Fund, which in turn invests into the Master Fund;

(c)      the investment activities of the Offshore Feeder Fund, the Onshore Feeder Fund and the Master Fund are managed by the General Partner in its separate capacity as an investment manager (the "**Investment Manager**") appointed pursuant to the terms of an amended and restated investment management agreement dated 27 April 2007; and

(d)      the Master Fund is a multi-strategy hedge fund that seeks to achieve significant returns while attempting to minimize downside risk; and

(e)      the Master Fund carries on its business, via the General Partner, primarily from New York City, New York, United States.

**Events leading up to the presentation of the petition**

6.      The Master Fund's financial position has recently deteriorated due to a combination of the following factors:

2

(a)   the shift in the concentration of the Master Fund's assets to illiquid private equity style investments which has caused an imbalance between liquid and illiquid assets;

(b)   a global decline in oil prices which has negatively affected the Master Fund's assets which operate in the oil and gas sector;

(c)   a delay in the availability of audited financial statements due to the esoteric nature of many of the investment assets of the Master Fund;

(d)   delayed monetisation events in relation to the Master Fund's investment assets which has delayed a rebalancing of the Master Fund's liquidity position;

(e)   a large amount of investor redemptions remaining unpaid past their due date, as noted below; and

(f)   the necessary borrowing of funds by the Master Fund to fund certain of its investment assets.

7.   Additionally, in recognition of its financial circumstances, on 30 June 2016 the Master Fund suspended withdrawals in accordance with its limited partnership agreement.

8.   The financial circumstances of the Master Fund have also been further negatively impacted by a number of regulatory issues and investigations ongoing in the United States. These events, particularly as reported in the press, have at the present juncture made it nearly impossible for the Master Fund to leverage its positions and monetise them to the benefit of the Master Fund and its ultimate investors.

9.   Most recently on 28 July 2016, Parris Investments Ltd ("**Parris**"), presented and served a petition to this Honourable Court for the winding up of the Offshore Feeder Fund on the basis that Parris is an unpaid redemption creditor of the Offshore Feeder Fund in the amount claimed of US$1,080,480.43 and that the Offshore Feeder Fund has, as at the petition date, failed to satisfy such liability to

3

Parris. That petition is due to heard by this Honourable Court on Tuesday 23 August 2016.

**The Master Fund's liabilities – bank and promissory notes**

10.   The Master Fund's principal financial liabilities to bank and promissory note creditors comprise:

   (a)   Heartland Bank: the Master Fund owes liabilities to Heartland Bank (an Arkansas, United States, state bank) ("**Heartland**") in the original principal amount of US$7,000,000 plus interest pursuant to a credit agreement dated 31 August 2015 made between Heartland (as lender) and the Master Fund (as borrower) and a promissory note dated 31 August 2015 issued by the Master Fund to. The outstanding liability of the Master Fund to Heartland was US$7,069,684.03 as at 30 May 2016;

   (b)   Kismetia: the Master Fund owes liabilities to Kismetia Ltd ("**Kismetia**") in the original principal amount of US$9,327,262.62 plus interest accruing at a rate of 1% per month (increasing to 3% per month following the occurrence of an event of default) pursuant to a promissory note and security agreement dated 31 December 2015 and as amended by a first amendment to promissory note and security agreement dated 14 June 2016, in each case made between the Master Fund and Kismetia. The outstanding liability of the Master Fund to Kismetia was US$9,803.046.75 as at 30 May 2016;

   (c)   PPNE 16% lenders and PPNE 12% lenders: the Master Fund owes liabilities to a disparate group of lenders pursuant to:

      (i)   a promissory note dated 11 May 2015 made between the Master Fund (as borrower) and such lenders in the aggregate principal amount of US$28,660,751 63 and incurring interest at a rate of 16% per annum. The outstanding liability of the Master Fund to such lenders was US$30,632,499.76 as at 30 May 2016; and

      (ii)   a promissory note dated 12 August 2015 made between the Master Fund (as borrower) and such lenders in the aggregate

4

principal amount of US$15,523,619 22 and incurring interest at a rate of 12% per annum. The outstanding liability of the aster Fund to such lenders was US$15,625,749.49 as at 30 May 2016;

(d)    Twosons:

    (i)    the Master Fund owes liabilities to Twosons in the principal amount of US$14,000,000 plus interest at a rate of 1.333% per month pursuant to a promissory note dated 18 September 2014 made between the Master Fund (as borrower) and Twosons. The outstanding liability of the Master Fund to Twosons was US$6,082,666.67 as at 30 May 2016;

(e)    Platinum Partners Credit Opportunities Master Fund LLC: the Master Fund owes liabilities to PPCO in the original principal amount of US$25,000,000 plus interest at a rate of 1.333% per month pursuant to a revolving promissory note dated 1 January 2015 issued by the Master Fund to PPCO. The outstanding liability of the Master Fund to PPCO was US$1,393,239.11 as at 30 May 2016;

(f)    Platinum Partners Liquid Opportunities Fund: the Master Fund owes liabilities to PPLO in the original principal amount of US$10,000 plus interest at a rate of 1% per month pursuant to an unsigned revolving line of credit promissory note stated to be dated 1 October 2015. The outstanding liability of the Master Fund to PPLO was US$1,930,498.95 as at 30 May 2016;

(g)    White Rock Properties: the Master Fund owes liabilities to White Rock Properties LLC ("**White Rock Properties**") in the original principal amount of US$8,500,000 pursuant to a promissory note dated 16 May 2016 made between the Master Fund (as borrower) and White Rock Properties (as lender). The outstanding liability of the Master Fund to White Rock Properties was US$8,908,088 as at 30 May 2016; and

(h)    Richard Stadtmauer, Marisa Stadtmauer and the National Society for Hebrew Day Schools: the Master Fund owes liabilities owed to:

5

(i)    Richard Stadtmauer in the original principal amount of US$6,390,043 79 plus interest at a rate of 7% per annum pursuant to a promissory note dated 27 May 2016 made between the Master Fund (as borrower), the Onshore Feeder Fund (as co-borrower) and Richard Stadtmauer (as lender). The outstanding liability of the Master Fund to Richard Stadtmauer was US$6,464,594.30 as at 30 May 2016;

(ii)    Marisa Stadtmauer in the original principal amount of US$4,115,052.52 plus interest at a rate of 7% per annum pursuant to a promissory note dated 27 May 2016 made between the Master Fund (as borrower), the Onshore Feeder Fund (as co-borrower) and Marisa Stadtmauer (as lender). The outstanding liability of the Master Fund to Marisa Stadtmauer was US$4,163,061 47 as at 30 May 2016;

(iii)    the National Society for Hebrew Day Schools (the "**NSHDS**") in the original principal amount of US$2,278,829.93 plus interest at a rate of 7% per annum pursuant to a promissory note dated 27 May 2016 made between the Master Fund (as borrower), the Offshore Feeder Fund (as co-borrower) and the NSHDS. The current outstanding liability of the Master Fund to the NSHDS is US$2,305,416.28 as at 30 May 2016;

(i)    Credit Suisse: a Uniform Commercial Code filing was made in the United States in respect of the Master by Credit Suisse on 8 July 2016 which likely relates to the Master Fund's entry into a prime brokerage relationship with Credit Suisse.

**The Master Fund's liabilities – New Mountain**

11    The Master Fund has a potential liability to New Mountain in an amount claimed of US$33,246 158.50 (as at 18 May 2016 and subject to daily accruing interest claimed for the period thereafter) (the "**New Mountain Claim**"). The New Mountain Claim arises from a securities purchase and put agreement dated 7 November 2014 (the "**New Mountain Put Agreement**") which was originally

6

made between the Master Fund and New Mountain Finance Holdings LLC ("**NMFH**") and which NMFH subsequently assigned to New Mountain.

12.  In summary terms (as alleged by New Mountain and in relation to which the Master Fund's position is reserved):

   (a)  pursuant to the terms of the New Mountain Put Agreement, NMFH purchased from the Master Fund US$30,000,000 of 12% second priority senior secured notes issued by Northstar GOM Holdings Group LLC (one of the Master Fund's investments) (the "**Northstar Notes**"). The Master Fund was required to make payments to NMFH under the terms of the New Mountain Put Agreement and NMFH had an option to require the Master Fund to repurchase the Northstar Notes at a price equal to the principal amount. Pursuant to amendments to the New Mountain Put Agreement, the Master Fund agreed to pay four equal instalments of US$7,500,000 to New Mountain subject to the terms set out therein. Failure to pay such amounts would constitute an acceleration event under the New Mountain Put Agreement requiring the Master Fund to repurchase the balance of the Northstar Notes at a repurchase price calculated in accordance with the terms of that agreement;

   (b)  New Mountain alleges that the Master Fund is in breach of its payment obligations to New Mountain under the New Mountain Put Agreement and a dispute between New Mountain and the Master Fund is being litigated before the Supreme Court of the State of New York, New York County (the "**New York Supreme Court**") (the "**New York Proceedings**");

   (c)  on 18 May 2016, New Mountain served a statutory demand on the Master Fund and threatened to present a winding up petition against the Master Fund if the amount claimed was not paid within 21 days;

   (d)  within the context of the New York Proceedings, New Mountain has sought summary judgment against the Master Fund. A verdict in respect of such summary judgment application may now be returned at any time; and

7

(e)    on 15 June 2016, the Master Fund succeeded in obtaining a temporary restraining order and injunction from the New York Supreme Court which restrains New Mountain from presenting a petition to this Honourable Court for the winding up of the Master Fund. Such temporary restraining order and injunction remains in effect and New Mountain has not served a winding up petition on the Master Fund.

**The Master Fund's liabilities – redemption creditors**

13.    Prior to the Offshore Feeder Fund's and the Onshore Feeder Fund's suspension of the redemption of their shares or limited partner interests (as applicable) on 30 June 2016 a number of their investors had requested to redeem their shares or limited partner interests, either in full or in part.

14.    As at the date of this Petition:

(a)    the Offshore Feeder Fund owes approximately US$32,964,557 of unpaid redemptions and approximately US$6,935,186 in respect of audit holdback to its redemption creditors; and

(b)    the Onshore Feeder Fund owes approximately US$35,429,553 of unpaid redemptions and approximately US$2,974,843 in respect of audit holdback to its redemption creditors,

(such amounts together, the "**Redemption Creditor Claims**");

15.    The Offshore Feeder Fund (albeit via the Intermediate Offshore Feeder Fund which is interposed as a pass-through entity between the Master Fund and the Offshore Feeder Fund) and the Onshore Feeder Fund have corresponding back to back redemption creditor claims and/or withdrawal requests (as applicable) against the Master Fund in an aggregate amount equal to the Redemption Creditor Claims.

**The Master Fund's liabilities – other creditor liabilities**

16.    The Master Fund owes additional liabilities to the Offshore Feeder Fund (via the Intermediate Offshore Feeder Fund) and the Onshore Feeder Fund in respect of

8

audit holdback amounts in the sums of US$6,935,186 41 and US$2,974,843.15, respectively, and liabilities of US$4,716,731.82 to the Intermediate Offshore Feeder Fund in respect of amounts payable by the Intermediate Offshore Feeder Fund to the Investment Manager.

17.    The Master Fund is also subject to a number of other liabilities including but not limited to:

(a)    accrued expenses and other liabilities in the amount of US$6,449,468 in respect of, amongst other things, fees due to professional services providers and legal expenses incurred by legal counsel;

(b)    US$4,291,275 payable to the General Partner;

(c)    accrued but unpaid fees due to traders of US$13,073,209;

(d)    amounts due to the holders of minority interests in the Master Fund's subsidiary companies of US$1,813,251;

(e)    liabilities of approximately US$106,824,701 representing the amount the Master Fund expects to cover in respect of short sale contracts entered into by the Master Fund; and

(f)    unrealised depreciation on derivative contracts of approximately US$15,742,077.

**Insolvency**

18.    The most recently available un-audited financial statements of the Master Fund comprise a balance sheet prepared as at 30 May 2016 which showed that the Master Fund has access to only US$68,530 of cash assets as at that date. In addition, as at 16 August 2016, Master Fund's cash assets had increased, but only to US$881,976 which amount is insufficient to enable the Master Fund to discharge its liability in respect of the Redemption Creditor Claims.

19.    Accordingly:

9

(a)    the financial position of the Master Fund has deteriorated such that it does not have access to a sufficient amount of liquid assets in order to meet its present liabilities, including its present liabilities in respect of Redemption Creditor Claims;

(b)    it is unlikely that the Master Fund will be able to meet its liabilities to.

(i)    Kismetia; or

(ii)    White Rock Properties,

each which are stated to fall due on 31 August 2016; and

(c)    there exists a risk that summary judgment may be returned against the Master Fund in the New York Proceedings which may immediately and substantially increase the Master Fund's liabilities.

**Conclusion**

20.    The Master Fund is unable to pay its debts and is therefore liable to be wound up.

21.    The Limited Partners of the Master Fund have consented to the General Partner presenting this petition for the winding up of the Master Fund in its capacity as the general partner of the Master Fund.

**YOUR PETITIONER THEREFORE HUMBLY PRAYS:**

1.    That the Master Fund be wound up in accordance with section 92(d) of the Companies Law as applied by and subject to section 36 of the ELP Law.

2.    That Matthew James Wright and Christopher Barnett Kennedy both of RHSW (Cayman) Limited, Windward 1, Regatta Office Park, P.O. Box 897, West Bay Road, Grand Cayman, KY1-1103, Cayman Islands be appointed as Joint Official Liquidators of the Master Fund (the "JOLs").

3.    That the JOLs shall not be required to give security for their appointment.

15197500 3 P0971.132468

4.    That the JOLs shall have the power to act jointly and severally in their capacity as liquidators of the Master Fund.

5.    The JOLs are hereby authorised jointly and severally to exercise any of the following powers without further sanction of the Court:

(a)    the power to bring or defend or continue any action or other legal proceeding in the name and on behalf of the Master Fund;

(b)    the power to carry on the business of the Master Fund so far as may be necessary for the presentation of a compromise or arrangement to its creditors and/or for its beneficial winding up;

(c)    the power to enter into discussions and negotiations for and on behalf of the Master Fund, for the purpose of, including but not limited to:

(i)    restructuring the Master Fund's business and operations;

(ii)    restructuring or rescheduling the Master Fund's indebtedness; and/or

(iii)    making any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Master Fund or for which the Master Fund may be rendered liable,

(d)    the power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the Master Fund and a limited partner or alleged limited partner or other debtor or person apprehending liability to the Master Fund;

(e)    the power to sell any of the Master Fund's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;

11

15197500.3 P0971 132468

(f)     the power to raise or borrow money and grant securities therefor over the property of the Master Fund,

(g)     the power to engage staff (whether or not as employees of the Master Fund) to assist the JOLs in the performance of their functions;

(h)     the power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions, whether in the Cayman Islands or elsewhere;

(i)     the power to:

    (i)     take control of the ownership interests of the Master Fund in its direct subsidiaries and/or joint ventures, investment, associated companies, business or other entities ("**Subsidiaries**") of the Master Fund in which the Master Fund holds an interest, in each case wherever located, as the JOLs shall think fit;

    (ii)     call or cause to be called such meetings of such Subsidiaries and/or to sign such resolutions (in each case in accordance with the provisions of any relevant constitutional or related documentation of such companies) and take such other steps, including applications to appropriate courts and/or regulators, as the JOLs shall consider necessary to appoint or remove directors, legal representatives, officers, and/or managers to or from such Subsidiaries, and in each case take such steps as are necessary to cause the registered agents (or other equivalent corporate administrators) of such Subsidiaries to give effect to the changes to the boards of directors, legal representatives, officers, and/or managers of such Subsidiaries, including (without limitation) effecting changes to the company registers of such Subsidiaries as may be deemed appropriate by the JOLs; and/or

    (iii)     to take such other action in relation to all such Subsidiaries as the JOLs shall think fit for the purpose of protecting the assets of the Master Fund and managing the affairs of the Master Fund;

12

(j)    the power to communicate with and carry out any necessary filings with regulatory bodies as appropriate, including, without limitation, the Cayman Islands Registrar of Exempted Limited Partnerships, the Cayman Islands Monetary Authority and the United States Securities and Exchange Commission in the name and on behalf of the Master Fund;

(k)    the power to enter into an amendment to the existing investment management agreement dated 27 April 2007 made between, amongst others, the Master Fund and Platinum Management (NY) LLC (the "**Investment Manager**") (the "**IMA**"). Payments made pursuant to the IMA should be regarded as an expense of the liquidation;

(l)    the power to enter into a protocol with Guidepost Solutions LLC ("**Guidepost**"), to regulate the manner in which the JOLs, Guidepost and Mr. Bart Schwartz may cooperate with each other on such matters as the JOLs may determine to be in the best interests of the creditors of the Master Fund; and

(m)    the power to do all acts and execute, in the name and on behalf of the Master Fund, all deeds, receipts and other documents in connection with the exercise of their powers notwithstanding that the JOLs are not the general partner of the Master Fund and, for that purpose, use the Master Fund's seal (if any) when necessary.

6.    There shall be constituted a liquidation committee ("**Liquidation Committee**") consisting of no more than five members who are creditors of the Master Fund.

7.    To the fullest extent permitted by law, the Liquidation Committee and its members shall have no duty, whether fiduciary or otherwise, to any other creditor, the Master Fund, the JOLs or any other person by reason of, or in connection with, their membership of or participation in the Liquidation Committee

8.    The JOLs be authorised, if they think fit, to:

(a)    take any such action as may be necessary or desirable to commence, or to cause the Master Fund to commence, proceedings under Chapter 11

13

of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JOLs may consider appropriate;

(b)    take any such action as may be necessary or desirable to obtain recognition of the appointment of the JOLs in any other relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose, including, without limitation as representatives of the Master Fund (as applicable) to seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JOLs may consider appropriate.

9.    Pursuant to Section 97 of the Companies Law, no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Master Fund except with the leave of the Court and subject to such terms as the Court may impose.

10.    Pursuant to Section 99 of the Companies Law, no disposition of the Master Fund's property by or with the authority of the JOLs in either case in the carrying out of their duties and functions and the exercise of their powers pursuant to this Order shall be avoided and any payments made into or out of the bank accounts(s) of the Master Fund in the ordinary course of business of the Master Fund between the date of the presentation of the Petition herein and the date of the appointments of the JOLs shall not be avoided by virtue of the provisions of section 99 of the Companies Law in the event of an order for the winding up of the Master Fund being made on the Petition.

11.    Subject to section 109(2) of the Companies Law and the Insolvency Practitioner's Regulations 2008 (as amended), the JOLs be authorised to render and pay invoices out of the assets of the Master Fund for their own remuneration.

12.    The JOLs be at liberty to meet all disbursements reasonably incurred in connection with the performance of their duties and, for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the Master Fund as an expense of the liquidation.

13.    The JOLs be at liberty to apply generally.

14

15197500 3 P0971 132468

14.   The costs of and incidental to the Petition be paid forthwith out of the assets of the Master Fund.

15.   Such further or other relief be granted as this Honourable Court deems appropriate.

AND your Petitioner will ever pray etc.

DATED the  *22nd*  day of  *August*  2016.


_____
*Walkers*
**WALKERS**
Attorneys at Law for the Company

NOTE:   This Petition is intended to be served on:

(i)   all known creditors of the Company

(ii)   Platinum Partners Value Arbitrage Fund (International) Limited

(iii)   Platinum Partners Value Arbitrage Intermediate Fund Limited

(iv)   The Cayman Islands Monetary Authority

15197500 3 P0971 132468

## NOTICE OF HEARING

TAKE NOTICE THAT the hearing of this Petition will take place at the Law Courts, George Town, Grand Cayman on                                  at 10.00 am.


Any correspondence or communication with the Court relating to the hearing of this Petition should be addressed to the Registrar of the Financial Services Division of the Grand Court at PO Box 495, Grand Cayman, KY1-1106, Telephone 345 949 4296

This **PETITION** is presented by Walkers, Attorneys at Law, 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, for the Master Fund whose address for service is care of its said Attorneys at Law.

16

<u>IN THE GRAND COURT OF THE CAYMAN ISLANDS</u>

<u>FINANCIAL SERVICES DIVISION</u>

<u>CAUSE NO:</u> 118 | 16

IN THE MATTER OF SECTION 92 OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND (INTERNATIONAL) LTD.

**PETITION**

To: The Grand Court of the Cayman Islands

The humble petition of **Parris Investments Limited**, Trident Chambers, Wickhams Cay, PO Box 146, Tortola, British Virgin Islands, (the "**Petitioner**") shows that:

**A.    BACKGROUND**

1.    Platinum Partners Value Arbitrage Fund (International) Limited (the "**Fund**") was incorporated and registered as an exempt company in the Cayman Islands on 25 October 2002, under the Companies Law (as amended) (the "**Law**") with registration number 120736.

2.    The Fund is a mutual fund registered with the Cayman Islands Monetary Authority ("**CIMA**"), pursuant to the Mutual Funds Law (as amended), with reference number 6785.

3.    The Fund carries on business as an investment fund. The Fund invests all of its investable capital in Platinum Partners Value Arbitrage Intermediate Fund Limited (the "**Intermediate Fund**", an exempted, limited liability company incorporated in the Cayman Islands on 9 April 2010.

4.    The Intermediate Fund invests all of its investable capital in Platinum Partners Value Arbitrage Fund LP (the "**Master Fund**"), an exempted, limited partnership formed under the laws of the Cayman Islands. The Fund, Intermediate Fund and Master Fund appear to have offices in Manhattan, New York.

6985785.4

1

5. The registered office of the Fund is Intertrust Corporate Services (Cayman) Limited, Walkers, 190 Elgin Avenue, Georgetown, Grand Cayman, KY1-9001, Cayman Islands.

6. The authorised share capital of the Fund, as defined in its Articles of Association dated 22 February 2006 (the "**Articles**"), is $50,000 divided into 5,000,000 participating, redeemable shares with a nominal or par value of $0.01 each, with the power for the Fund, subject to the Law and the Articles, to divide the shares into any number of share classes and series.

7. The investment manager of the Fund is, and at all times has been, Platinum Management (NY) LLC, A Delaware U.S.A. limited liability company (the "**Investment Manager**").

8. To the best of the Petitioner's knowledge, the Fund carries out its business as an investment fund, through the Investment Manager and the Investment Manager's offices, located in New York, U.S.A.

9. The administrator of the Fund is, and at all times has been, SS&C Technologies Incorporated, a U.S.A limited liability company (the "**Administrator**").

10. In or about August 2015, Parris was provided with a Confidential Private Offering Memorandum dated April 2015 (the "**Offering Memorandum**") relating to Class L shares in the Fund.

11. In or about August 2015, Parris purchased 556.9018 L-class shares in the Fund (the "**Shares**") from its broker, Exante Limited, a Limited Liability Company incorporated under the laws of Malta ("**Exante**").

12. By a document entitled "Transaction Confirmation" and dated 10 September 2015, the Fund acknowledged the validity of the transfer of Shares from Exante to Parris in August 2015.

**B.    INABILITY TO PAY ITS DEBTS**

**The Redemption Request**

13. Articles 39 to 54 of the Articles prescribe the procedure for redeeming shares:

13.1    Article 39 states that the procedure for the redemption of shares is subject to the Articles and the Law;

6985785.4

2

13.2    Article 40 states that:

"... on receipt by the Company or its authorised agent of a Redemption Notice not less than such number of days' prior written notice as the Directors may from time to time determine... the Company shall redeem on such Redemption Date at the Redemption Price for the relevant Class and Series such number of Shares as are requested to be redeemed by the Redeeming Shareholder."

In an email dated 26 October 2015, the Investment Manager confirmed to the Petitioner that sixty (60) days' notice was required by the Fund, in order for the Petitioner to redeem the Shares on the last day of the quarter, that being 31 December 2015.

13.3    Article 42 states that:

"The Redemption Price for shares being redeemed on a Redemption Date shall be the Net Asset Value per Share of the relevant Class of Series  (after payment of any Incentive Fee with respect to the redeemed Shares and net of any reserves or holdbacks for estimated accrued expenses, liabilities and contingencies) on the relevant Redemption Date..."

13.4    Article 45 states that:

"If the determination of the Net Asset Value or the Net Asset Value per Share ... is suspended beyond the day on which it would normally occur by reason of a declaration of the Directors, the right of a holder to request redemption of the Shares ... in respect of which such calculation has been suspended shall be similarly suspended... If the request is not so withdrawn, the redemption of such Shares shall be made on the Redemption date following the end of the suspension on the basis of the Net Asset Value per Share ... on the relevant Redemption Date."

13.5    Article 47 states:

"Payment of the amount due on redemption of Shares on any Redemption Date...shall be made 90% (computed on the basis of unaudited data) within 30 days following the Redemption Date and the balance within 30 days following the annual

6985785.4

3

*audit of the Company's books. The balance, subject to audit adjustments, shall be paid with interest from the Redemption Date at the average (calculated weekly) per annum short term (13 weeks) U.S. Treasury Bill rate.*"

13.6   Article 52 states that:

"*On the relevant Redemption date the holder of Shares to be redeemed shall cease to be entitled to any rights in respect of that share ... and accordingly his name shall be removed from the Register of Members with respect thereto and the share shall be available for re-issue and, until re-issued, shall form part of the unissued share capital of the Company.*"

14.   The Offering Memorandum provisions mirror those in the Articles and state, inter alia:

14.1   "*A Shareholder with respect to its Class L Shares may redeem all or a portion of such Shares as of the last day of each fiscal quarter, and at such other times as the Directors will, in their sole discretion, permit (each, a "Class L Redemption Date"), upon not less than sixty (60) days' prior written notice to the Administrator and the Investment Manager (subject to the discretion of the Directors to waive such notice)... The redemption price for Shares will be based on the Net Asset Vale per Share for the relevant series of Shares as of the relevant Redemption Date...*";

14.2   "*The Fund intends to pay at least ninety percent (90%) of the redemption price, and may pay more than ninety percent (90%) of the redemption price in the discretion of the Investment Manager in consultation with the Directors, within thirty (30) days after the applicable Redemption Date, with the balance thereof (subject to audit adjustments) being paid without interest within thirty (30) days after completion of the audit of the Funds' books for such fiscal year.*"

14.3   "*All redemption requests must be received by the Investment Manager and the Administrator in writing. The Investment Manager will confirm by e-mail or by telephone and in writing all redemption requests which are received in good order. Shareholders failing to receive e-mail or telephone confirmations within five (5) days should contact the Investment Manager to confirm receipt. Failure by the Shareholder*

6985785.4

4

*to ensure the receipt of a redemption request may render such redemption request void.".*

15. On 27 October 2015 the Petitioner submitted to the Fund, a written redemption request in respect of the whole of its holding of 556.9018 Shares in the Fund (the **"Redemption Request"**). The next redemption date, which was defined in the Articles and the Offering Memorandum as being the last day of each fiscal quarter, was 31 December 2015 (the **"Redemption Date"**).

16. The Petitioner sent the Redemption Request to the Investment Manager some 65 days prior to the Redemption Date.

17. By an email dated 28 October 2015, the Investment Manager confirmed receipt of the Petitioner's Redemption Request and that the Redemption Request was in good order.

18. According to Article 52 of the Articles, as at the Redemption Date, Parris was no longer considered the holder of the Shares and had no rights in respect of the same.

19. On the Redemption Date, the Petitioner became a creditor of the Fund.

20. Pursuant to the Articles and the Offering Memorandum, payment of ninety percent (90%) of the redemption price was due on or around 30 January 2016.

21. By an email dated 2 February 2016, the Administrator confirmed that the Redemption Request was being processed and that payment of the redemption price could be expected by the Petitioner within 30 days of the closing of December 2015 period.

22. By an email dated 19 February 2016, the Investment Manager confirmed again that the Petitioner would receive the redemption price in the second quarter of 2016. The Investment Manager went on to say that the payment of the redemption price was dependant on the Fund selling off illiquid assets.

23. On 3 March 2016 the Administrator issued the Petitioner with an investor statement for the period ending 31 December 2015 (the **"Investor Statement"**). The Investor Statement showed that the Petitioner owned 556.9018 shares as at 30 November 2015 and that a full redemption for all 556.9018 shares had been made as at 31 December 2015. The Investor

6985785.4

5

Statement shows that the net asset value per share was 1,949.1417 and that the total value of the redeemed shares as at 31 December 2015 was $1,080,480.43 (the "**Redemption Price**").

24.     By 6 May 2016 the Petitioner had not received any payment in respect of the Redemption Price. In an email dated 6 May 2016, the Investment Manager confirmed that the Petitioner could expect payment of the Redemption Price, less "*10% audit holdback*" at "*the end of June or beginning of July (maybe earlier).*"

25.     On 24 June 2016, the Petitioner received notice of an investor call scheduled for 28 June 2016 together with an invitation to submit questions to be addressed during the call.

26.     In an email dated 26 June 2016 to the Investment Manager, the Petitioner requested that the Fund answer, inter alia, the following questions:

26.1    "*What is the reason for the delay in effecting the redemption payment on the Redemption Date applicable and what is the legal/contractual basis for such delay by reference to respective clauses/provisions in the Fund's Articles and the PPM?*";

26.2    "*Does the Fund presently have immediate financial recourses available to make the redemption payment in question (say, by the end of the first half of 2016)?*"; and

26.3    "*Are you able to give any estimate for the timing of the redemption for the existing L shareholders who submitted their redemption requests in October 2015 or earlier?*".

27.     A telephone call was held between the Fund, the Petitioner and other investors of the Fund on 28 June 2016. The Fund did not provide any answers to the Petitioner's queries regarding payment of the Redemption Price.

28.     By an email dated 26 June 2016 to the Administrator, which was copied to the Investment Manager, the Petitioner requested that the Administrator provide answers to, inter alia, the following questions:

28.1    "*What is the legal/contractual basis for the delay in effecting the redemption payment on the redemption date of 31 December 2015 by reference to respective clauses/provisions in the Fund's Articles and the PPL?*"; and

6985785.4

6

28.2 *"Are you able to send a written statement of our shareholding and confirming the status of the redemption?"* [sic].

To date, the Petitioner has not received a response to these questions.

29. The Petitioner has not received notice from the directors of the Fund, that any part of the Redemption Price has been held back in respect of any Incentive Fee. Nor have the Fund notified the Petitioner of any holdback of the Redemption Price for the purposes of reserves to cover estimated accrued expenses, liabilities and/or contingencies.

30. To the best of the Petitioner's knowledge, no declaration by the directors of the Fund relating to the suspension of the calculation of the net asset value, or net asset value per share, had been issued prior to the Redemption Date.

31. The Petitioner is currently unaware of the status of the annual audit and therefore cannot comment, at this stage, on whether the 10% holdback of the Redemption Price is currently due.

32. The Fund has not disputed that the Redemption Price is owed to the Petitioner and that 90% of the Redemption Price has been due and owing since 30 January 2016.

33. As at the date of this petition, 90% of the Redemption Price remains due and owing to the Petitioner.

**Other matters relevant to the ability of the Fund to pay its debts**

The S-shares

34. By a letter dated 23 November 2015, nearly 4 weeks after the Redemption Request had been received and acknowledged, the Investment Manager informed investors that the Fund, via its investment in the Master Fund, held substantial investments in illiquid assets. The letter explains that the Investment Manager planned to segregate certain illiquid assets (and related liabilities) from the remainder of the portfolio. Enclosed with the letter were the proposed revisions to the Articles and notice of an extraordinary general meeting at which the proposed amendments would be voted on.

6985785.4

This Petition is filed by Collas Crill, Attorneys-at-Law for the Petitioner, whose address for service is that of their said Attorneys, 2nd Floor
Willow House, Cricket Square, George Town,
PO Box 709, Grand Cayman, KY1-1107, CAYMAN ISLANDS

35.   By an email dated 30 November 2015, the Fund informed the Petitioner that the requisite number of investors had consented to the amendment of the Articles and the creation of a new class of shares (the "**S-shares**").

36.   The amended Articles dated November 2015 (the "**Amended Articles**") define the Class S Share as:

*"a Share issued by the Directors upon a determination by the Directors of their duly authorised agent, that an investment by the [Fund] or the Master Fund may be classified as Special Investment."*

37.   The Amended Articles, define "Special Investment" as:

*"any investment by the [Fund] or the Master Fund that the Directors or their duly authorised agent determine is illiquid, lacks a readily assessable market value or should be held until the resolution of a special event of circumstance."*

38.   Article 40 of the Amended Articles state that:

*"... no Class S Shares issued by the Company in connection with any Special Investment by the Company or the Master Fund shall be redeemable at the option of the Shareholder but shall be redeemable by the Company pursuant to the provisions of these Articles..."*.

39.   The Petitioner did not consent to the creation of the S-shares and has at all material times considered that it is not the holder of any S-shares, by virtue of a valid Redemption Request being accepted by the Investment Manager prior to the creation of the S-shares.

40.   By an email dated 19 February 2016, the Investment Manager confirmed that the Shares would not be converted to S-shares and the Redemption Price (less any holdback after the completion of the 2015 audited financials) was anticipated to be paid during the second quarter of 2016. In addition the email states that the Fund was unable to pay its debt to Parris, until such time as it was able to realise some of its illiquid assets. This email provides confirmation that the Fund was insolvent on a cash flow basis as at 19 February 2016.

41.   The creation of the S-shares was intended by the Fund to improve the Fund's liquidity issues, and its ability to pay it debts as they fell due. In the event, the Fund has not paid the

6985785.4

Redemption Price due to the Petitioner. It therefore appears that the restructuring of the Fund has not had sufficient impact on the Fund's liquidity, and its ability to pay its debts as they fall due, to allow the Fund to pay the Redemption Price due to the Petitioner.

New Mountain

42.    In addition to the Fund's own liquidity issues, the Master Fund, is also failing to pay its debts as they fall due. The Petitioner is aware that, on or about 7 March 2016, a company by the name of New Mountain Finance Corporation ("**New Mountain**") brought proceedings (index no. 651186/2016) before the Supreme Court of the State of New York against the Master Fund (the "**New Mountain Proceedings**").

43.    The New Mountain Proceedings arise out of the Master Fund's sale, on or about 7 November 2014, to New Mountain of $30 million (the "**Principal Amount**") of second priority senior secured notes (the "**Notes**"), then owned by the Master Fund. The sale of the Notes, and other matters related to the Notes, were governed by a Securities Purchase and Put Option Agreement dated 7 November 2014, which was subsequently amended on 31 March 2015 and 7 November 2015 (the "**Agreement**").

44.    The Agreement provided for the mandatory re-purchase of the Notes in four instalments of US$7.5 million. In the event of default, the Principal Amount would become due. The Master Fund failed to pay the first instalment due on 30 November 2015. As a result, New Mountain served a default notice and demanded the Principal Amount. The New Mountain Proceedings were commenced by way of a motion for summary judgment in lieu of complaint, pursuant to Section 3213 of the New York Civil Practice Law and Rules.

45.    On 18 May 2016, New Mountain served a Statutory Demand for payment of US$ 33,246,158.50 (principal debt plus interest) on the Master Fund at its registered office in the Cayman Islands. Upon the application of the Master Fund to the Supreme Court of the State of New York, on 15 June 2016, Judge Scarpulla granted an injunction restraining New Mountain from presenting a winding-up petition in the Cayman Islands on the ground that the Agreement contained a "forum selection clause", which provides that any legal action or proceeding with respect to the Agreement will be brought exclusively in the courts of the State of New York or of the United States of America for the Southern District of New York.

6985785.4

This Petition is filed by Collas Crill, Attorneys-at-Law for the Petitioner, whose address for service is that of their said Attorneys, 2nd Floor Willow House, Cricket Square, George Town, PO Box 709, Grand Cayman, KY1-1107, CAYMAN ISLANDS

46. At the hearing of New Mountain's motion for summary judgment in lieu of complaint on 7 July 2016, the Master Fund accepted that first instalment due on 30 November 2015 was not paid and raised no specific defence, despite several invitations from Judge Scarpulla to do so. The Master Fund sought only to argue that the 'section 3213 procedure' was not the appropriate procedure in the circumstances. The case was adjourned to a hearing in the last week of July or first week of August 2016.

47. The ability of the Master Fund to pay its debts as they fall due, is likely to impact upon the ability of the Fund to pays it debts, in circumstances where the Fund has invested all of its investable capital, through the Intermediate Fund, in the Master Fund.

## C.    CONCLUSION

48. The Petitioner believes that the Fund is unable to pay its debts as they fall due and ought to be compulsorily wound up.

49. The Petitioner nominates Mr Matthew Wright and Mr Christopher Kennedy of RHSW (Cayman Limited), PO Box 897, Windward 1, Regatta Office Park, Grand Cayman KY1-1103, Cayman Islands for appointment as Joint Official Liquidators of the Fund.

## D.    THE ORDERS HUMBLY SOUGHT

The Petitioner therefore humbly prays that:

1. The Fund be wound up in accordance with the provisions of the Companies Law.

2. Mr Matthew Wright and Mr Christopher Kennedy of RHSW (Cayman Limited), PO Box 897, Windward 1, Regatta Office Park, Grand Cayman KY1-1103, Cayman Islands be appointed as Joint Official Liquidators of the Fund, with the power to act jointly and severally ("**JOLs**").

3. The JOLs shall not be required to give security for their appointment.

6985785.4

This Petition is filed by Collas Crill, Attorneys-at-Law for the Petitioner, whose address for service is that of their said Attorneys, 2ᴺᴰ Floor
Willow House, Cricket Square, George Town,
PO Box 709, Grand Cayman, KY1-1107, CAYMAN ISLANDS

4.    In addition to the powers prescribed in Part II of the Third Schedule to the Law which are exercisable without sanction of the Grand Court, the JOLs may also without further sanction of intervention from the Grand Court exercise jointly and severally the following powers set out in Part I of the Third Schedule to the Law:

    a.    The power to carry on the business of the Fund insofar as may be necessary for its beneficial winding up;

    b.    The power to deal with all questions in any way relating to or affecting assets or the winding up of the Fund, to take any security for the discharge of any such call, debt, liability of claim and to give a complete discharge in respect of it;

    c.    The power to engage staff (whether or not as employees of the Fund) to assist the JOLs in the performance of their functions; and

    d.    The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions in the Cayman Islands, the United States of America.

5.    The JOLs' remuneration and expenses be paid out of the assets of the Fund in accordance with Section 109 of the Companies Law, the Insolvency Practitioner's Regulations 2008 (as amended) and Order 20 of the Companies Winding Up Rules 2008 (as amended).

6.    The JOLs be at liberty to meet all disbursements reasonably incurred during the performance of their functions.

7.    The JOLs be at liberty to and do pay their agents, employees, attorneys, solicitors and whomever else they may employ or instruct, remuneration and costs, and for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the Fund as expenses of the winding up.

6985785.4

This Petition is filed by Collas Crill, Attorneys-at-Law for the Petitioner, whose address for service is that of their said Attorneys, 2ⁿᵈ Floor
Willow House, Cricket Square, George Town,
PO Box 709, Grand Cayman, KY1-1107, CAYMAN ISLANDS

8.    No suit, action or other proceedings, including criminal proceedings, shall be proceeded or commenced against the Fund except with leave of the Grand Court pursuant to section 97 of the Companies Law.

9.    No disposition of the Fund's property by or with the authority of the JOLs in the carrying out of their duties and functions and the exercise of their powers shall be avoided by virtue of section 99 of the Companies Law.

10.   The costs of and incidental to this petition shall be paid out of the assets of the Fund as an expense of the liquidation, such costs to be taxed on the indemnity basis if not agreed.

11.   Such further orders as the Honourable Grand Court deems fit.

DATED this 22 day of July 2016.

*Collas Crill*

**Collas Crill**
**Attorneys-at-Law for the Petitioner**

This Petition is intended to be served on:

1.  The Fund
2.  The Cayman Islands Monetary Authority

6985785.4

12

**<u>EXHIBIT B</u>**

WALKERS

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO: FSD  1 3 1  OF 2016

IN THE MATTER OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF THE EXEMPTED LIMITED PARTNERSHIP LAW, 2014

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

## EX PARTE SUMMONS

LET ALL PARTIES concerned attend before a Judge in Chambers at the Law Courts, George Town, Grand Cayman on the        day of        , 2016 at   o'clock upon an application by Platinum Partners Value Arbitrage Fund L.P acting by its general partner, Platinum Management (NY) LLC pursuant to Section 104(3) of the Companies Law (2013 Revision) and Section 36(3)(g) of the Exempted Limited Partnership Law, 2014 for an Order appointing provisional liquidators of Platinum Partners Value Arbitrage Fund L P.

Dated this    23rd    day of August 2016

Filed this    23rd    day of August 2016

_____
**WALKERS**
Attorneys-at-law for the Applicant

To:        The Registrar of the Financial Services Division
And to

Time Estimate: Between 1 and 2 hours

This Ex Parte Summons is filed by Walkers, Attorneys-at-Law for the Applicant, whose address for service is that of their Attorneys-at-Law, Walkers, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9001, Cayman Islands.

15189943.1 P0971 132468

**EXHIBIT C**

IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

CAUSE NO: FSD 118/2016 (NAS)

The Honourable Mr. Justice Andrew J. Jones QC
In Open Court, Tuesday 23 August 2016

IN THE MATTER OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND (INTERNATIONAL) LIMITED

WINDING UP ORDER

UPON hearing counsel for Parris Investments Limited (the "Petitioners") upon its petition presented on 22 July 2016 for an order that Platinum Partners Value Arbitrage Fund (International) Fund Limited (the "Fund") be wound up.

AND UPON hearing counsel for Kismetia Ltd, a redemption creditor and shareholder of the Fund, supporting the petition

AND UPON hearing counsel for Mr. Antton van Dijke, a redemption creditor of the Fund, supporting the petition

AND UPON reading a letter written to the Court on behalf of Omar Sarmini and Next Generation TS FBO O.R. Sarmini IRA 2014, a redemption creditor of the Fund, supporting the petition

AND UPON reading the First and Second Affidavits of Valdis Apalka sworn on 25 July and 22 August 2016 and filed on behalf of the Petitioner

AND UPON reading the affidavit of Kyra Romano-Scott sworn on 23 August 2016 and filed on behalf of Kismetia Ltd in support of its application that Messrs. Mark Longbottom and Geoffrey Varga be appointed as official liquidators

**AND Upon** reading the affidavits made pursuant to CWR Order 3, rule 4 and sworn by (a) Matthew James Wright and Christopher Barnett Kennedy on 22 July 2016 and filed on behalf of the Petitioner and (b) Mark Longbottom and Geoffrey Varga on 22 August 2016 and filed on behalf of Kismetia Ltd

**AND UPON** the Court being satisfied the hearing of the petition was duly advertised

**IT IS ORDERED THAT:**

1. The Fund be wound up in accordance with provisions of the Companies Law.

2. Mr. Matthew James Wright and Mr. Christopher Barnett Kennedy of RHSW (Cayman) Limited, Windward 1, Regatta Office Park, P.O. Box 897, West Bay Road, Grand Cayman, KY1-1103, Cayman Islands (the "**JOLs**").

3. The JOLs shall not be required to give security for their appointment.

4. In addition to the powers prescribed in Part II of the Third Schedule to the Companies Law, the JOLs may also exercise, jointly and severally, the following powers set out in Part I of the Third Schedule to the Companies Law without further sanction or intervention from the Grand Court:

    a. The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions in the Cayman Islands and the United States.

5. No suit, action or other proceedings, including criminal proceedings, shall be proceeded or commenced against the Fund except with leave of the Grand Court pursuant to section 97 of the Companies Law.

6. No disposition of the Fund's property by or with the authority of the JOLs in the carrying out of their duties and functions and the exercise of their powers shall be avoided by virtue of section 99 of the Companies Law.

7. The Petitioner's costs and the Fund's costs of being represented at the hearing shall be paid out of the assets of the Fund as an expense of this liquidation, such costs to be taxed if not agreed with the JOLs.

**DATED** this 23rd day of August 2016.

**FILED** this 23rd day of August 2016

_____
**The Honourable Mr. Justice Andrew J. Jones QC**
**Judge of the Grand Court**

This Order is filed by Collas Crill, Attorneys-at-Law for and on behalf of the Petitioners, Parris Investments Limited, whose address for service is that of their said Attorneys, 2nd Floor, Willow House, Cricket Square, George Town, PO Box 709, Grand Cayman, KY1-1107, CAYMAN ISLANDS

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO: FSD 131 OF 2016 (AJJ)

IN THE MATTER OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF THE EXEMPTED LIMITED PARTNERSHIP LAW, 2014

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

BEFORE THE HONOURABLE MR. JUSTICE ANDREW J. JONES QC
IN CHAMBERS
25 AUGUST 2016



ORDER

**UPON** the application (this "**Application**") of Platinum Partners Value Arbitrage Fund L.P. (the "**Master Fund**") acting by Platinum Management (NY) LLC (the "**General Partner**") in its capacity as the general partner of the Master Fund pursuant its *ex parte* Summons issued on 23 August 2016 for the appointment of joint provisional liquidators pursuant to section 104(3) of the Companies Law (2013 Revision) (as amended) (the "**Companies Law**") (as applied by and subject to section 36 of the Exempted Limited Partnership Law, 2014);

**AND UPON** reading the winding up petition presented by the Master Fund acting by its General Partner on 23 August 2016 2016 (the "**Petition**"), the First Affidavit of Mark Nordlicht sworn on 23 August 2016, the Second Affidavit of Nordlicht sworn on 23 August 2016, the Third Affidavit of Mark Nordlicht sworn on 24 August 2016, the First Affidavit of Matthew Wright sworn on 19 August 2016, the First Affidavit of Christopher Kennedy sworn on 19 August 2016, the First Affidavit of Patrick McConvey sworn on 24 August 2016 and the respective exhibits thereto;

**AND UPON** hearing counsel for the Master Fund, acting by its General Partner

**IT IS ORDERED THAT:**

1.    Matthew Wright and Christopher Kennedy both of RHSW (Cayman) Limited, Windward 1, Regatta Office Park, P.O. Box 897, West Bay Road, Grand Cayman, KY1-1103,

Cayman Islands, be appointed as joint provisional liquidators (the "**JPLs**") of the Master Fund with the power to act jointly and severally and during the period of their appointment, any act required or authorised to be done by the JPLs may be done by any one or more of the JPLs.

2.    The JPLs shall not be required to give security for their appointment.

3.    The JPLs are hereby authorised jointly and severally to take such steps as, in their discretion, may be necessary or expedient for the purpose of presenting a compromise or arrangement to the creditors of the Master Fund in order to facilitate the maximisation of the value of the assets of the Master Fund upon their realisation.

4.    In addition to the powers prescribed in Part II of the Third Schedule to the Companies Law, the JPLs are hereby authorised jointly and severally to exercise any of the following powers without further sanction of the Court:

(a)    the power to defend any action or other legal pending against the Master Fund;

(b)    the power to enter into discussions and negotiations for and on behalf of the Master Fund for the purpose of, but not limited to -

(i)    restructuring the Master Fund's business and operations;

(ii)    restructuring or rescheduling the Master Fund's indebtedness; and/or

(iii)    making any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Master Fund or for which the Master Fund may be rendered liable;

(c)    the power to sell any of the Master Fund's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels, in each case subject to the prior consent of the liquidation committee constituted pursuant to paragraph 5 of this Order (the "**Liquidation Committee**") or, if such consent is not provided, subject to the prior sanction of the Court;



(d)     the power to raise or borrow money and grant securities therefor over the property of the Master Fund, in each case subject to the prior consent of the Liquidation Committee or, if such consent is not provided, subject to the prior sanction of the Court;

(e)     the power to engage staff (whether or not as employees of the Master Fund) to assist the JPLs in the performance of their functions;

(f)     the power to engage independent attorneys and other professionally qualified persons to assist the JPLs in the performance of their functions, whether in the Cayman Islands or elsewhere provided that the JPLs shall not engage Walkers, Schulte Roth & Zabel LLP or Dechert LLP as attorneys for the JPLs;

(g)     the power to:

    (i)     take control of the ownership interests of the Master Fund in its direct subsidiaries and/or joint ventures, investment, associated companies, business or other entities ("**Subsidiaries**") of the Master Fund in which the Master Fund holds an interest, in each case wherever located, as the JPLs shall think fit;

    (ii)    call or cause to be called such meetings of such Subsidiaries and/or to sign such resolutions (in each case in accordance with the provisions of any relevant constitutional or related documentation of such companies) and take such other steps, including applications to appropriate courts and/or regulators, as the JPLs shall consider necessary to appoint or remove directors, legal representatives, officers, and/or managers to or from such Subsidiaries, and in each case take such steps as are necessary to cause the registered agents (or other equivalent corporate administrators) of such Subsidiaries to give effect to the changes to the boards of directors, legal representatives, officers, and/or managers of such Subsidiaries, including (without limitation) effecting changes to the company registers of such Subsidiaries as may be deemed appropriate by the JPLs; and/or



(iii)    to take such other action in relation to all such Subsidiaries as the JPLs shall think fit for the purpose of protecting the assets of the Master Fund and managing the affairs of the Master Fund;

(h)    the power to communicate with and carry out any necessary filings with regulatory bodies as appropriate, including, without limitation, the Cayman Islands Registrar of Exempted Limited Partnerships, the Cayman Islands Monetary Authority and the United States Securities and Exchange Commission in the name and on behalf of the Master Fund;

(i)    subject to the prior sanction of the Court following an application to be made upon not less than five days' notice to the Liquidation Committee, the power to engage either Platinum Management (NY) LLC, or another professional asset manager, to act as investment adviser;

(j)    subject to the prior sanction of the Court following an application to be made upon not less than five days' notice to the Liquidation Committee, the power to engage or re-engage the services of Guidepost Solutions LLC; and

(k)    the power to do all acts and execute, in the name and on behalf of the Master Fund, all deeds, receipts and other documents in connection with the exercise of their powers notwithstanding that the JPLs are not the general partner of the Master Fund and, for that purpose, use the Master Fund's seal (if any) when necessary.

5.    A Liquidation Committee shall be constituted consisting of -

(a)    not more than three creditors of the Master Fund;

(b)    an unredeemed shareholder of Platinum Partners Value Arbitrage Fund (International) Limited (the "**Offshore Feeder Fund**"); and

(c)    a limited partner of Platinum Partners Value Arbitrage Fund (USA) LP ("the **Onshore Feeder Fund**")

6.    To the fullest extent permitted by law, the Liquidation Committee and its members shall have no duty, whether fiduciary or otherwise, to any other creditor, the Master Fund, the

Offshore Feeder Fund, the Onshore Feeder Fund, the JPLs or any other person by reason of, or in connection with, their membership of or participation in the Liquidation Committee.

7.    The Liquidation Committee be authorised to engage Cayman Islands attorneys whose fees and expenses, reasonably and properly incurred on the instructions of the Liquidation Committee, shall be paid out of the assets of the Master Fund as an expense of the provisional liquidation.

8.    The JPLs be authorised, if they think fit, to take any such action as may be necessary or desirable to obtain recognition of the appointment of the JPLs in any other relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose, including, without limitation as representatives of the Master Fund (as applicable) to seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JPLs may consider appropriate.

9.    Pursuant to Section 97 of the Companies Law, no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Master Fund except with the leave of the Court and subject to such terms as the Court may impose.

10.   Pursuant to Section 99 of the Companies Law, no disposition of the Master Fund's property by or with the authority of the JPLs in either case in the carrying out of their duties and functions and the exercise of their powers pursuant to this Order shall be avoided and any payments made into or out of the bank accounts(s) of the Master Fund in the ordinary course of business of the Master Fund between the date of the presentation of the Petition herein and the date of the appointments of the JPLs shall not be avoided by virtue of the provisions of section 99 of the Companies Law in the event of an order for the winding up of the Master Fund being made on the Petition.

11.   The costs of and incidental to the Application incurred by the Master Fund shall be agreed and paid by the JPLs out of the assets of the Master Fund.



**AND IT IS FURTHER DIRECTED THAT:**

12.    The hearing of the Petition shall be adjourned to 27 October 2016 at 10.00 am and any creditor of the Master Fund shall have liberty to apply, upon not less than 14 days' notice to the Master Fund and the JPLs, to –

11.1 discharge or vary this order; and/or

11.2 remove the JPLs and appoint alternative provisional liquidators.

13.    Any creditor or shareholder of the Offshore Feeder Fund and any creditor or limited partner of the Onshore Feeder Fund may be heard on the adjourned hearing of the Petition.

14.    The JPLs and/or the General Partner shall cause copies of the Petition and this Order to be served upon –

14.1    all creditors of the Master Fund;

14.2    all redemption creditors and shareholders of the Offshore Feeder Fund; and

14.3    all creditors and limited partners of the Onshore Feeder Fund.

15.    The JPLs shall provide copies of all affidavits and exhibits thereto filed in support of the Petition and the Summons, upon request, to any creditor, shareholder and/or limited partner of the Master Fund, the Offshore Feeder Fund and the Onshore Feeder Fund.

16.    The JPLs shall file a report to the Court detailing the progress of the provisional liquidation and setting out their recommendations for any potential restructuring and shall make such report available to all creditors and limited partners of the Master Fund and all creditors and shareholders of the Offshore Feeder Fund and all creditors and limited partners of the Onshore Feeder Fund by no later than 13 October 2016.



17.     A transcript of the hearing of this Application shall be prepared and approved by the Judge and the JPLs shall provide copies, upon request, all creditors, shareholders and limited partners of the Master Fund, the Offshore Feeder Fund and the Onshore Feeder Fund.

DATED this 25th day of August 2016

FILED this 29th day of August 2016

**The Honourable Mr. Justice Andrew J. Jones QC**

**JUDGE OF THE GRAND COURT**

This Order is filed by Walkers, Attorneys at Law for the Petitioner whose address for service is care of its said Attorneys at Law, Walkers, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9001, Cayman Islands

## EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **NORTHSTAR OFFSHORE GROUP, LLC** | § | |
| | § | **Case No. 16-34028** |
| **Putative Debtor.** | § | |

## DECLARATION OF CHRISTOPHER BARNETT KENNEDY IN SUPPORT OF PUTATIVE DEBTOR NORTHSTAR OFFSHORE GROUP, LLC'S MOTION FOR ABSTENTION UNDER 11 U.S.C. § 305(A), AND ANSWER, AFFIRMATIVE DEFENSES, AND REQUEST FOR DISCOVERY
### (Relates to Docket No. 1)

I, Christopher Barnett Kennedy, declare the following to be true and accurate under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am over the age of 18 and otherwise fully competent to make this declaration. I am a board director of RHSW (Cayman) Limited ("RHSW"). I, along with Matthew James Wright, have been appointed by the Grand Court of the Cayman Islands (the "Cayman Islands Court") as a Joint Provisional Liquidator ("JPL") of Platinum Partners Value Arbitrage Fund LP, an exempt limited partnership formed under the laws of the Cayman Islands ("PPVA LP"). As a result of this appointment, I am familiar with the wind-up proceedings that are currently pending in the Cayman Islands Court with respect to PPVA LP. The facts contained in this declaration are based on my personal knowledge.

2.      I submit this declaration in support of Putative Debtor Northstar Offshore Group, LLC's Motion for Abstention Under 11 U.S.C. § 305(a), and Answer, Affirmative Defenses, and Request for Discovery, dated September 29, 2016. This declaration is intended to supplement

the declaration of Matthew James Wright dated September 29, 2016, the contents of which declaration is incorporated herein by reference.

3.      As described in the Wright Declaration PPVA LP holds certain direct and indirect equity interests in Northstar Offshore Group, LLC ("Northstar").    Because of PPVA LP's financial interests in Northstar, the JPLs desire to preserve and maximize the value of Northstar and its business operations to the extent possible.    This includes potentially providing financial support to Northstar.

4.      Mr. Wright further stated that the JPLs have been actively engaged in identifying sources of funding that may be used by or for Northstar's benefit in connection with its efforts to resolve its liquidity issues outside of a bankruptcy proceeding.

5.      Those efforts have continued and as previously reported, much of the funds that are understood to be necessary to resolve Northstar's involuntary filings are currently in escrow. Mr. Wright further reported that the JPL's were to make an application to the Cayman Court to seek sanction regarding the potential Northstar investment ("Cayman Northstar Application").

6.      A hearing on the Cayman Northstar Application was submitted on September 28, 2016 and a hearing on that application was held on September 30, 2016.

7.      At the September 30 hearing, the Cayman Court requested additional information to determine whether it would be prepared to authorize the JPLs to put additional moneys into the Northstar investment.

8.      Additionally, the Cayman Court suggested that the JPLs should consider whether it would be appropriate for one of them to personally appear at the hearing before this Court scheduled for October 5, 2016.    The Cayman Court further suggested that the JPLs should consider requesting an adjournment of the status hearing in order to allow Northstar to provide

the JPLs and the Cayman Court with a reorganization plan, in order for it to properly determine whether or not Northstar could continue as a going concern.   The Cayman Court was not prepared to sanction the JPLs' further investment in Northstar without first considering that reorganistaion plan and granted the JPLs leave to reapply on short notice for sanction of the investment as soon as they were in position to place the appropriate evidence before the Cayman Court.

9.      Pursuant to the JPLs wish to preserve and maximize the value of Northstar and its business operations, I will attend the October 5, 2016 hearing in the above captioned case and request a short adjournment of the same.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed : October 4, 2016.

Christopher Barnett Kennedy

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| NORTHSTAR OFFSHORE GROUP, LLC | § | |
| | § | Case No. 16-34028 |
| Putative Debtor. | § | |

**DECLARATION OF MATTHEW JAMES WRIGHT IN SUPPORT OF PUTATIVE
DEBTOR NORTHSTAR OFFSHORE GROUP, LLC'S MOTION FOR ABSTENTION
UNDER 11 U.S.C. § 305(A), AND ANSWER, AFFIRMATIVE DEFENSES,
AND REQUEST FOR DISCOVERY**
(Relates to Docket No. 1)

I, Matthew James Wright, declare the following to be true and accurate under penalty of

perjury pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 and otherwise fully competent to make this declaration. I

am a board director of RHSW (Cayman) Limited ("RHSW"). I, along with Christopher Barnett

Kennedy, have been appointed by the Grand Court of the Cayman Islands (the "Cayman Islands

Court") as a Joint Provisional Liquidator ("JPL") of Platinum Partners Value Arbitrage Fund LP,

an exempt limited partnership formed under the laws of the Cayman Islands ("PPVA LP"). As a

result of this appointment, I am familiar with the wind-up proceedings that are currently pending

in the Cayman Islands Court with respect to PPVA LP. The facts contained in this declaration are

based on my personal knowledge.

2.    I submit this declaration in support of Putative Debtor Northstar Offshore Group,

LLC's ("Northstar's") Motion for Abstention Under 11 U.S.C. § 305(a), and Answer, Affirmative

Defenses, and Request for Discovery, dated September 29, 2016.

3.    On July 22, 2016, an involuntary winding up petition was filed in the Cayman Islands Court against Platinum Partners Value Arbitrage Fund (International) LP ("<u>PPVA International</u>"), a company incorporated and registered as an exempt company in the Cayman Islands. PPVA International invests its investable capital in Platinum Partners Value Arbitrage Intermediate Fund Limited, an exempt limited liability company incorporated in the Cayman Islands, which, in turn, invests its investable capital in PPVA LP. I, along with Mr. Kennedy, have been appointed the Joint Official Liquidator for PPVA International.

4.    On August 23, 2016, PPVA LP filed a voluntary winding up petition in the Cayman Islands Court. On August 25, 2016, the Cayman Islands Court issued a provisional order (the "<u>Order</u>"), which it filed on August 29, 2016, appointing me and Mr. Kennedy as the JPLs for PPVA LP. A copy of the Order is attached as Exhibit 1 to this Declaration.

5.    The Order grants Mr. Kennedy and me with various authority to act on behalf of PPVA LP with respect to its property and affairs. For example, the JPLs are authorized to "take such steps as, in [our] discretion, may be necessary or expedient for the purpose of presenting a compromise or arrangement to the creditors" of PPVA LP in order to maximize the value of PPVA LP's assets. Ex. 1 at ¶ 3. The JPLs are also authorized to "enter into discussions and negotiations for and on behalf of" PPVA LP for the purpose of making compromises or arrangements with PPVA LP's creditors and alleged creditors. *Id.* at ¶ 4(b)(iii). In addition, the Order grants the JPLs the power to sell PPVA LP's property, subject to the consent of either a liquidation committee or, if they do not consent, the Cayman Islands Court. *Id.* at ¶ 4(c). The Order also grants the JPLs the power to take such other action in relation to PPVA LP's subsidiaries as they see fit "for the purpose of protecting the assets of [PPVA LP] and managing the affairs of [PPVA LP]." *Id.* at ¶ 4(g).

6.      A hearing on the Order is scheduled for October 27, 2016 before the Cayman Islands Court.

7.      PPVA LP holds certain direct and indirect equity interests in Northstar Offshore Group, LLC ("Northstar"). I am aware that an involuntary bankruptcy petition has been filed against Northstar in the United States Bankruptcy Court for the Southern District of Texas (the "Involuntary Petition").

8.      Because of PPVA LP's financial interests in Northstar, the JPLs desire to preserve and maximize the value of Northstar and its business operations. This includes providing financial support to Northstar. In exercising the powers granted to us by the Order, Mr. Kennedy and I are attempting to raise funds for the purpose of providing funding to or for the benefit of Northstar. I understand that Northstar must respond to the Involuntary Petition by September 29, 2016, and therefore, I understand that time is of the essence in connection with providing funds to Northstar.

9.      Since our appointment by the Cayman Islands Court, the JPLs have been actively engaged in identifying sources of funding that may be used by or for Northstar's benefit in connection with its efforts to resolve its liquidity issues outside of a bankruptcy proceeding. As part of this process, the JPLs have identified certain assets of subsidiaries of PPVA LP that may be immediately sold to generate cash. The JPLs are in the final stages of the sale process with respect to certain of these assets, which process includes a sanctions application to the Cayman Islands Court and discussions with regulators. A portion of the funds generated as a result of this sale process will be used for Northstar's benefit.

10.    While I cannot make any guarantees, it is my current belief and expectation, based on the progress that has been made to date, that funding from the sale of these assets will be forthcoming in short order.  Much of the necessary funds for Northstar are currently being held in escrow although, as noted above, the transaction is subject to Cayman Court approval and contract.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed : September 28, 2016.

/s/ _____

Matthew James Wright

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO: FSD 131 OF 2016 (AJJ)

IN THE MATTER OF THE COMPANIES LAW (2013 REVISION)

AND IN THE MATTER OF THE EXEMPTED LIMITED PARTNERSHIP LAW, 2014

AND IN THE MATTER OF PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.

BEFORE THE HONOURABLE MR. JUSTICE ANDREW J. JONES QC
IN CHAMBERS
25 AUGUST 2016



<u>ORDER</u>

**UPON** the application (this "**Application**") of Platinum Partners Value Arbitrage Fund L.P. (the "**Master Fund**") acting by Platinum Management (NY) LLC (the "**General Partner**") in its capacity as the general partner of the Master Fund pursuant its *ex parte* Summons issued on 23 August 2016 for the appointment of joint provisional liquidators pursuant to section 104(3) of the Companies Law (2013 Revision) (as amended) (the "**Companies Law**") (as applied by and subject to section 36 of the Exempted Limited Partnership Law, 2014);

**AND UPON** reading the winding up petition presented by the Master Fund acting by its General Partner on 23 August 2016 2016 (the "**Petition**"), the First Affidavit of Mark Nordlicht sworn on 23 August 2016, the Second Affidavit of Nordlicht sworn on 23 August 2016, the Third Affidavit of Mark Nordlicht sworn on 24 August 2016, the First Affidavit of Matthew Wright sworn on 19 August 2016, the First Affidavit of Christopher Kennedy sworn on 19 August 2016, the First Affidavit of Patrick McConvey sworn on 24 August 2016 and the respective exhibits thereto;

**AND UPON** hearing counsel for the Master Fund, acting by its General Partner

**IT IS ORDERED THAT**:

1.    Matthew Wright and Christopher Kennedy both of RHSW (Cayman) Limited, Windward 1, Regatta Office Park, P.O. Box 897, West Bay Road, Grand Cayman, KY1-1103,

Cayman Islands, be appointed as joint provisional liquidators (the "**JPLs**") of the Master Fund with the power to act jointly and severally and during the period of their appointment, any act required or authorised to be done by the JPLs may be done by any one or more of the JPLs.

2.      The JPLs shall not be required to give security for their appointment.

3.      The JPLs are hereby authorised jointly and severally to take such steps as, in their discretion, may be necessary or expedient for the purpose of presenting a compromise or arrangement to the creditors of the Master Fund in order to facilitate the maximisation of the value of the assets of the Master Fund upon their realisation.

4.      In addition to the powers prescribed in Part II of the Third Schedule to the Companies Law, the JPLs are hereby authorised jointly and severally to exercise any of the following powers without further sanction of the Court:

    (a)      the power to defend any action or other legal pending against the Master Fund;

    (b)      the power to enter into discussions and negotiations for and on behalf of the Master Fund for the purpose of, but not limited to -

        (i)      restructuring the Master Fund's business and operations;

        (ii)     restructuring or rescheduling the Master Fund's indebtedness; and/or

        (iii)    making any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Master Fund or for which the Master Fund may be rendered liable;

    (c)      the power to sell any of the Master Fund's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels, in each case subject to the prior consent of the liquidation committee constituted pursuant to paragraph 5 of this Order (the "**Liquidation Committee**") or, if such consent is not provided, subject to the prior sanction of the Court;



(d)    the power to raise or borrow money and grant securities therefor over the property of the Master Fund, in each case subject to the prior consent of the Liquidation Committee or, if such consent is not provided, subject to the prior sanction of the Court;

(e)    the power to engage staff (whether or not as employees of the Master Fund) to assist the JPLs in the performance of their functions;

(f)    the power to engage independent attorneys and other professionally qualified persons to assist the JPLs in the performance of their functions, whether in the Cayman Islands or elsewhere provided that the JPLs shall not engage Walkers, Schulte Roth & Zabel LLP or Dechert LLP as attorneys for the JPLs;

(g)    the power to:

(i)    take control of the ownership interests of the Master Fund in its direct subsidiaries and/or joint ventures, investment, associated companies, business or other entities ("**Subsidiaries**") of the Master Fund in which the Master Fund holds an interest, in each case wherever located, as the JPLs shall think fit;

(ii)    call or cause to be called such meetings of such Subsidiaries and/or to sign such resolutions (in each case in accordance with the provisions of any relevant constitutional or related documentation of such companies) and take such other steps, including applications to appropriate courts and/or regulators, as the JPLs shall consider necessary to appoint or remove directors, legal representatives, officers, and/or managers to or from such Subsidiaries, and in each case take such steps as are necessary to cause the registered agents (or other equivalent corporate administrators) of such Subsidiaries to give effect to the changes to the boards of directors, legal representatives, officers, and/or managers of such Subsidiaries, including (without limitation) effecting changes to the company registers of such Subsidiaries as may be deemed appropriate by the JPLs; and/or

(iii)     to take such other action in relation to all such Subsidiaries as the JPLs shall think fit for the purpose of protecting the assets of the Master Fund and managing the affairs of the Master Fund;

(h)     the power to communicate with and carry out any necessary filings with regulatory bodies as appropriate, including, without limitation, the Cayman Islands Registrar of Exempted Limited Partnerships, the Cayman Islands Monetary Authority and the United States Securities and Exchange Commission in the name and on behalf of the Master Fund;

(i)     subject to the prior sanction of the Court following an application to be made upon not less than five days' notice to the Liquidation Committee, the power to engage either Platinum Management (NY) LLC, or another professional asset manager, to act as investment adviser;

(j)     subject to the prior sanction of the Court following an application to be made upon not less than five days' notice to the Liquidation Committee, the power to engage or re-engage the services of Guidepost Solutions LLC; and

(k)     the power to do all acts and execute, in the name and on behalf of the Master Fund, all deeds, receipts and other documents in connection with the exercise of their powers notwithstanding that the JPLs are not the general partner of the Master Fund and, for that purpose, use the Master Fund's seal (if any) when necessary.

5.     A Liquidation Committee shall be constituted consisting of -

(a)     not more than three creditors of the Master Fund;

(b)     an unredeemed shareholder of Platinum Partners Value Arbitrage Fund (International) Limited (the **"Offshore Feeder Fund"**); and

(c)     a limited partner of Platinum Partners Value Arbitrage Fund (USA) LP ("the **Onshore Feeder Fund**")

6.     To the fullest extent permitted by law, the Liquidation Committee and its members shall have no duty, whether fiduciary or otherwise, to any other creditor, the Master Fund, the

Offshore Feeder Fund, the Onshore Feeder Fund, the JPLs or any other person by reason of, or in connection with, their membership of or participation in the Liquidation Committee.

7.  The Liquidation Committee be authorised to engage Cayman Islands attorneys whose fees and expenses, reasonably and properly incurred on the instructions of the Liquidation Committee, shall be paid out of the assets of the Master Fund as an expense of the provisional liquidation.

8.  The JPLs be authorised, if they think fit, to take any such action as may be necessary or desirable to obtain recognition of the appointment of the JPLs in any other relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose, including, without limitation as representatives of the Master Fund (as applicable) to seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JPLs may consider appropriate.

9.  Pursuant to Section 97 of the Companies Law, no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Master Fund except with the leave of the Court and subject to such terms as the Court may impose.

10. Pursuant to Section 99 of the Companies Law, no disposition of the Master Fund's property by or with the authority of the JPLs in either case in the carrying out of their duties and functions and the exercise of their powers pursuant to this Order shall be avoided and any payments made into or out of the bank accounts(s) of the Master Fund in the ordinary course of business of the Master Fund between the date of the presentation of the Petition herein and the date of the appointments of the JPLs shall not be avoided by virtue of the provisions of section 99 of the Companies Law in the event of an order for the winding up of the Master Fund being made on the Petition.

11. The costs of and incidental to the Application incurred by the Master Fund shall be agreed and paid by the JPLs out of the assets of the Master Fund.



**AND IT IS FURTHER DIRECTED THAT:**

12. The hearing of the Petition shall be adjourned to 27 October 2016 at 10.00 am and any creditor of the Master Fund shall have liberty to apply, upon not less than 14 days' notice to the Master Fund and the JPLs, to –

11.1 discharge or vary this order; and/or

11.2 remove the JPLs and appoint alternative provisional liquidators.

13. Any creditor or shareholder of the Offshore Feeder Fund and any creditor or limited partner of the Onshore Feeder Fund may be heard on the adjourned hearing of the Petition.

14. The JPLs and/or the General Partner shall cause copies of the Petition and this Order to be served upon –

14.1 all creditors of the Master Fund;

14.2 all redemption creditors and shareholders of the Offshore Feeder Fund; and

14.3 all creditors and limited partners of the Onshore Feeder Fund.

15. The JPLs shall provide copies of all affidavits and exhibits thereto filed in support of the Petition and the Summons, upon request, to any creditor, shareholder and/or limited partner of the Master Fund, the Offshore Feeder Fund and the Onshore Feeder Fund.

16. The JPLs shall file a report to the Court detailing the progress of the provisional liquidation and setting out their recommendations for any potential restructuring and shall make such report available to all creditors and limited partners of the Master Fund and all creditors and shareholders of the Offshore Feeder Fund and all creditors and limited partners of the Onshore Feeder Fund by no later than 13 October 2016.



17.     A transcript of the hearing of this Application shall be prepared and approved by the Judge and the JPLs shall provide copies, upon request, all creditors, shareholders and limited partners of the Master Fund, the Offshore Feeder Fund and the Onshore Feeder Fund.


DATED this 25th day of August 2016


FILED this 29th day of August 2016


_____
**The Honourable Mr. Justice Andrew J. Jones QC**

**JUDGE OF THE GRAND COURT**


This Order is filed by Walkers, Attorneys at Law for the Petitioner whose address for service is care of its said Attorneys at Law, Walkers, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9001, Cayman Islands.

**<u>EXHIBIT E</u>**

HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Barbra R. Parlin, Esq.
Arthur E. Rosenberg, Esq.
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Counsel for the Liquidators of the Funds*

### IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
|  |  |
|---|---|
| In re: | : |
|  | : |
| PLATINUM PARTNERS VALUE | : |
| ARBITRAGE FUND L.P. (IN | : |
| PROVISIONAL LIQUIDATION)[1], *et al.*, | : |
|  | : |
| Debtors in | : |
| Foreign Proceedings. | : |
|  | : |
|  | : |

Chapter 15

Case No. 16-_____ (___)

(Joint Administration Requested)

-----------------------------------------------------------x

### FOREIGN REPRESENTATIVES' STATEMENTS AND LISTS
### PURSUANT TO FED. R. BANKR. P. 1007(a)(4), 7007.1
### AND SECTION 1515(c) OF THE BANKRUPTCY CODE

I, Christopher Barnett Kennedy, along with Matthew James Wright, the duly appointed

joint provisional liquidators ("**Petitioners**" or "**Liquidators**") of Platinum Partners Value

Arbitrage Fund L.P. (in Provisional Liquidation) ("**Master Fund**") and the duly appointed joint

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Platinum Partners Value Arbitrage Fund L.P. (in Provisional Liquidation) (1954) and Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (2356). The registered office of the International Fund is c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, P.O. Box 897, Grand Cayman KY1-1103, Cayman Islands. The Master Fund's registered address is c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands.

official liquidators of Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) ("**International Fund,**" and together with Master Fund, the "**Funds**"), both Funds in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") (cause nos. FSD 131 of 2016 (AJJ) (Master Fund) and 118 of 2016 (AJJ) (International Fund)) as a result of the Grand Court's orders made pursuant to petitions for the winding up of the Funds under, as applicable, sections 92 and 104 of the Companies Law of the Cayman Islands (2016 Revision) and section 36 of the Exempted Limited Partnership Law, 2014 (collectively, the "**Cayman Liquidations**"), hereby submits the following information as required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, which provides:

> In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the name and address of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

### Statement under Fed. R. Bankr. P. 7007.1

Liquidators hereby state that certain entities own 10% or more of the equity of either of the Funds, set forth as follows:

| Fund | Entity |
|---|---|
| Master Fund | Platinum Partners Value Arbitrage Fund (USA) L.P., a Delaware limited partnership |
| Master Fund | Platinum Partners Value Arbitrage Intermediate Fund Ltd., a Cayman Islands Exempt Limited Company |
| International Fund | Chuuk LP |

#48082932_v3

**<u>Name and Address of All Parties or Bodies Authorized to Administer the Foreign
Proceedings of the Funds</u>**

The following individuals, with the corresponding business address, have been duly

appointed as the Joint Provisional Liquidators of the Master Fund and the Joint Official

Liquidators of the International Fund by the Grand Court:

| Name and Address of Foreign Representative |
|---|
| Matthew James Wright and Christopher Barnett Kennedy<br>RHSW (Cayman) Limited<br>Windward 1, Regatta Office Park<br>P.O. Box 897<br>West Bay Road, Grand Cayman, KY1-1103<br>Cayman Islands |

**<u>Statement under Section 1515(c) of the Bankruptcy Code</u>**

To the best of my knowledge, the Cayman Liquidations are the only foreign proceedings

to which either of the Funds is subject.

**All Parties to Litigation in Which Either of the Funds is a
<u>Party that is Pending in the United States at the Time of the Filing of the Petitions</u>**

To the extent known by the Liquidators, the parties to litigation pending in the United

States in which either of the Funds is currently a party are:

| Party | Type | Pending Litigation |
|---|---|---|
| Two Sons Corporation<br>c/o Claude Castro, Esq.<br>Claude Castro & Associates PLLC<br>545 Fifth Avenue, 8th Floor<br>New York, NY 10017 | Plaintiff | *Two Sons Corporation v. Platinum Partners Value Arbitrage Fund, L.P.*, No. 654865-2016 (N.Y. Sup. Ct., N.Y. Cty.) |
| Blake Schaefer<br>c/o Thad A. Davis, Esq.<br>Gibson Dunn & Crutcher LLP<br>555 Mission St., Suite 3000<br>San Francisco, CA 94105 | Claimant | *In re Blake Schaefer v. Platinum Management (NY) LLC, Platinum Partners Value Arbitrage Fund L.P.*, JAMS Ref. No. 1425021856 |

3

| | | |
|---|---|---|
| Platinum Management (NY) LLC<br>250 West 55th Street<br>14th Floor<br>New York, NY 10019 | Co-Respondent | *In re Blake Schaefer v. Platinum Management (NY) LLC, Platinum Partners Value Arbitrage Fund L.P.*, JAMS Ref. No. 1425021856 |
| Richard Stadtmauer<br>Marissa Stadtmauer<br>National Society of Hebrew Day Schools<br>c/o Jay P. Lefkowitz, P.C.<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022 | Claimants | *In re Richard Stadtmauer, Marisa Stadtmauer* and *The National Society for Hebrew Day Schools* v. *Platinum Partners Value Arbitrage Fund L.P., et al.*, JAMS Ref. No. 1425028132 |
| Platinum Partners Value Arbitrage Fund (USA) LP<br>Platinum Partners Credit Opportunities Master Fund LP<br>Platinum Partners Credit Opportunities Fund LLC<br>250 West 55th Street<br>14th Floor<br>New York, NY 10019 | Co-Respondents | *In re Richard Stadtmauer, Marisa Stadtmauer* and *The National Society for Hebrew Day Schools* v. *Platinum Partners Value Arbitrage Fund L.P., et al.*, JAMS Ref. No. 1425028132 |
| New Mountain Finance Corporation<br>c/o Matthew M. Oliver, Esq.<br>Lowenstein Sandler, LLP<br>1251 Avenue of the Americas<br>New York, NY 10020 | Plaintiff | *New Mountain Finance v. Platinum Partners Value Arbitrage Fund L.P.*, No. 651186-2016 (N.Y. Sup. Ct., N.Y. Cty.) |
| Meserole, LLC<br>c/o Scott M. Kessler, Esq. and Jamie B. Shyman, Esq.<br>666 Fifth Avenue, 20th Floor<br>New York, NY 10103 | Co-Plaintiff | *Meserole, LLC* and *Platinum Partners Value Arbitrage Fund LP v. Sativa FS I LP* and *Savita FS I GP, LLC*, No. 653628-2016 (N.Y. Sup. Ct., N.Y. Cty.) |
| Sativa FS I LLP<br>Sativa FS I GP, LLC<br>c/o Jed I. Bregman, Esq., Trevor J. Welch, Esq. and Brian S. Choi, Esq.<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019 | Co-Defendants | *Meserole, LLC* and *Platinum Partners Value Arbitrage Fund LP v. Sativa FS I LP* and *Savita FS I GP, LLC*, No. 653628-2016 (N.Y. Sup. Ct., N.Y. Cty.) |

4

| | | |
|---|---|---|
| Chicago Board Options Exchange<br>c/o Paul E. Greenwalt, Esq. and<br>Michelle A. Silverthorn, Esq.<br>Schiff Hardin LLP<br>233 South Wacker Dr., Suite 6600<br>Chicago, IL 60606 | Defendant | *Platinum Partners Value Arbitrage Fund, L.P. v. Chicago Board Options Exchange* and *Options Clearing Corporation*, No. 10-CH-54472 (Ill. Cir. Ct., Cook Cty.) |
| Options Clearing Corporation<br>c/o William J. Nissen, Esq. and<br>David M. Baron, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603 | Defendant | *Platinum Partners Value Arbitrage Fund, L.P. v. Chicago Board Options Exchange* and *Options Clearing Corporation*, No. 10-CH-54472 (Ill. Cir. Ct., Cook Cty.) |
| Enven Energy Ventures<br>c/o William B. "Bruce" Stanfill<br>Beirne, Maynard & Parsons, LLP<br>1300 Post Oak Blvd., Suite 2500<br>Houston, TX 77056 | Plaintiff | *Enven Energy Ventures v. Platinum Management (NY) LLC* and *Platinum Partners Value Arbitrage Fund*, No. 2015-52030 (Tex. Dist. Ct., Harris Cty.) |
| Platinum Management (NY) LLC<br>250 West 55th Street<br>14th Floor<br>New York, NY 10019 | Co-Defendant | *Enven Energy Ventures v. Platinum Management (NY) LLC* and *Platinum Partners Value Arbitrage Fund*, No. 2015-52030 (Tex. Dist. Ct., Harris Cty.) |
| Conrad & Scherer, LLP and Kozyak Tropin & Throckmorton, P.A.<br>c/o Albert Louis Frevola, Jr.<br>Conrad & Scherer LLP<br>633 South Federal Highway, 8th Floor<br>Fort Lauderdale, FL 33301 | Plaintiffs | *Conrad & Scherer, LLP* and *Kozyak Tropin & Throckmorton, P.A. v. Platinum Partners Value Arbitrage Fund, et al.*, CACE-15-011746, Division 25 (Fla. Cir. Ct., 17th Jud. Cir., Broward Cty.) |
| Centurion Structured Growth LLC<br>c/o Robert K. Burlington, Esq.<br>Coffey Burlington<br>2699 South Bayshore Drive, Penthouse<br>Miami, FL 33133 | Co-Defendant | *Conrad & Scherer, LLP* and *Kozyak Tropin & Throckmorton, P.A. v. Platinum Partners Value Arbitrage Fund, et al.*, CACE-15-011746, Division 25 (Fla. Cir. Ct., 17th Jud. Cir., Broward Cty.) |
| Thomas G. Andrus<br>White Marlin Energy Services, Inc. | Plaintiffs | *Matthews et al. v. Platinum Partners Value Arbitrage Fund L.P.*, No. 16-3124 (Bankr. S.D. Tex.) |

| | | |
|---|---|---|
| Guy E. Matthews<br>Carolyn Matthews<br>Stephen G. Lawrence<br>Carl Hammond<br>c/o Muhammad S. Aziz, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Agosto & Friend<br>800 Commerce St.<br>Houston, TX 77002 | | |
| Black Elk Energy Offshore<br>Operations, L.L.C.<br>Black Elk Energy, LLC<br>c/o Jorian L. Rose, Esq.<br>Baker Hostetler LLP<br>45 Rockefeller Plaza<br>New York, NY 10111 | Co-Defendants | *Matthews et al. v. Platinum Partners Value Arbitrage Fund L.P.*, No. 16-3124 (Bankr. S.D. Tex.) |
| Joel Edelstein<br>MD David Edelstein<br>John G. Hoffman<br>Iron Island Technologies Inc.<br>Gilad Kalter<br>David Levy<br>Naftali Manela<br>Mark Nordlicht<br>PPBE Holdings LLC<br>PPBE Management LLC<br>PPVA Black Elk (Equity) LLC<br>PPVA Black Elk (Investor) LLC<br>PPVA Black Elk (US) Corp.<br>Platinum Partners Black Elk<br>Opportunities Fund, LLC<br>Daniel Small<br>c/o Omar Jesus Alaniz, Esq.,<br>Daniel David, Esq. and Amy Pharr<br>Hefley, Esq.<br>Baker Botts LLP<br>2001 Ross Avenue, Suite 2600<br>Dallas, TX 75201 | Co-Defendants | *Matthews et al. v. Platinum Partners Value Arbitrage Fund L.P.*, No. 16-3124 (Bankr. S.D. Tex.) |
| Argonaut Insurance Company<br>c/o Paul Joseph Goodwine, Esq.<br>Looper Goodwine<br>650 Poydras St., Suite 2400<br>New Orleans, LA 70130 | Plaintiff | *Argonaut Insurance Company v. Platinum Partners Value Arbitrage Fund L.P. et al.*, No. 15-03335 (Bankr. S.D. Tex.) |

6

| | | |
|---|---|---|
| TKN Petroleum Offshore LLC<br>c/o Omar Jesus Alaniz, Esq. and<br>Daniel David, Esq.<br>Baker Botts LLP<br>2001 Ross Avenue, Suite 2600<br>Dallas, TX 75201 | Co-Defendant | *Argonaut Insurance Company v.<br>Platinum Partners Value Arbitrage<br>Fund L.P. et al.*, No. 15-03335<br>(Bankr. S.D. Tex.) |
| China Horizon Investment Group,<br>LLC<br>China Horizon Management LLC<br>China Horizon Village Stores<br>(HK) Limited<br>Mercy Consultants Limited<br>Mark Nordlicht<br>Bernard Fuchs<br>c/o William A. Burck, Esq.<br>Quinn Emanuel Urquhart &<br>Sullivan, LLP<br>777 6th Street, NW, 11th Floor<br>Washington, DC 20001 | Co-Plaintiffs | *China Horizon Investments, et al. v.<br>China Post Group Corporation, et al.*,<br>No. 650142-2016 (N.Y. Sup. Ct., N.Y.<br>Cty.) |
| China Post Group Corporation<br>3 Jinrong Street<br>Xichen District, Beijing<br>China<br><br>Beijing China Post Asset<br>Management Company Limited<br>3 Jinrong Street, Unit 3-1301<br>Xichen District, Beijing<br>China<br><br>Henan Provincial Post Corporation<br>59 Hua Yan Road<br>Jinshui District, Zhengzhou<br>Henan<br>China | Defendants | *China Horizon Investments, et al. v.<br>China Post Group Corporation, et al.*,<br>No. 650142-2016 (N.Y. Sup. Ct., N.Y.<br>Cty.) |
| Daniel Small | Claimant | *Arbitration re Daniel Small* |
| Platinum Management (NY) LLC<br>Platinum Liquid Opportunity Fund<br>(NY) LLC<br>Platinum Partners Liquid<br>Opportunity Master Fund L.P. | Co-Respondents | *Arbitration re Daniel Small* |

7

| | | |
|---|---|---|
| Raab, Sturm & Ganchrow, LLP<br>1250 Broadway, 36th Floor<br>New York, NY 10001 | | |
| Saviva FS I LP and Saviva FS 1<br>GP, LLC<br>c/o Jed I. Bregman, Esq. and<br>Trevor J. Welch, Esq.<br>Kasowitz, Benson, Torres &<br>Friedman, LLP<br>1633 Broadway<br>New York, NY 10019 | Co-Claimants | *Saviva FS I LP* and *Saviva FS I GP,<br>LLC vs. Meserole, LLC* and *Platinum<br>Partners Value Arbitrage Fund, LP*,<br>AAA Case No. 01-16-0002-5292<br>(Am. Arb. Ass'n). |
| Meserole, LLC<br>c/o Scott M. Kessler, Esq. and<br>Jamie B. Shyman, Esq.<br>666 Fifth Avenue, 20th Floor<br>New York, NY 10103 | Co-Respondent | *Saviva FS I LP* and *Saviva FS I GP,<br>LLC vs. Meserole, LLC* and *Platinum<br>Partners Value Arbitrage Fund, LP*,<br>AAA Case No. 01-16-0002-5292<br>(Am. Arb. Ass'n). |

### All Entities Against Whom Provisional Relief is Sought under 11 U.S.C. § 1519

Liquidators are not seeking provisional relief at this time, but intend to do so if it becomes necessary for the protection of the Funds.

I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry, and in contemplation of and subject to supplementation, true and correct.

Executed on this 18th day of October, 2016

_____
CHRISTOPHER BARNETT KENNEDY

8

#48082932_v3